**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2513-WJM-KMT

CHARLES REINHARDT, *et al.,*

     Plaintiffs,

v.

MARCELO KOPCOW, *et al.*,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART THE
STATE DEFENDANTS' MOTION TO DISMISS**

---

This action, brought under 42 U.S.C. § 1983, relates to the state of Colorado's treatment of persons convicted of sex crimes. Plaintiffs, who are inmates, parolees, and probationers of the Colorado Department of Corrections ("CDOC") and their family members (collectively "Plaintiffs"), allege that Defendants, who are employed by the CDOC or are members of the Sex Offender Management Board ("SOMB"), violated their First, Fourth, Fifth, and Fourteen Amendment rights. (Sec. Am. Compl. ("SAC") (ECF No. 81.) Plaintiffs seek monetary damages for the harms they have allegedly incurred, as well as injunctive and declaratory relief. (*Id.*)

Before the Court is the Motion to Dismiss ("Motion") filed by the members of the SOMB, as well as by Rick Raemisch, in his capacity as Executive Director of CDOC, and Rae Timme, Tori Kelly, Sheila Montoya, and Andrea Bennett-Bailey, who are all employed by the CDOC (collectively "Defendants"). (ECF No. 118.) For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I.  LEGAL STANDARD

Defendants bring the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  (ECF No. 118.)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.

Under Rule 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be

2

cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Second Amended Complaint is seventy-five pages long, and contains 98 numbered paragraphs.  (ECF No. 81.)  In the interest of efficiency and judicial economy, the Court will set forth below only those facts relevant to the issues raised in the Motion.

The Plaintiffs in this case fall into three categories: (1) inmates of the Colorado Department of Corrections who have been classified as sex offenders; (2) parolees and probationers who are mandated to participate in sex offender treatment and therapy; and (3) immediate family members of those inmates, parolees, and probationers.  (SAC ¶ 3.)  Defendants are the members of the SOMB and various employees of the CDOC who are responsible for devising, implementing, and enforcing policies governing inmates, parolees, and probationers who are classified as sex offenders.  (*Id*. ¶¶ 4-11.)

The SOMB has promulgated guidelines which apply to any inmate, parolee, or probationer that meets the SOMB's definition of a "sex offender".  (SAC ¶ 8(b).)  The SOMB is the final policymaking authority for the State of Colorado's policies governing treatment and behavioral monitoring of sex offenders who are incarcerated in the

CDOC, on parole, or on probation.  (*Id*. ¶ 8(c).)  Amongst these policies are the following:

- A restriction that no sex offender may have any visitation or telephone contact with anyone under the age of eighteen (including their own children and grandchildren), may not have pictures of children in their cell, house or residence, and may not discuss their children with spouses or other family members.  (*Id*. ¶ 9(a).)

- A restriction that a sex offender on parole or probation may not live in his own home if there are any children under the age of eighteen.  (*Id*. ¶ 9(b).)

- The requirement that all sex offenders participate in "therapy", which requires them to admit to or accept responsibility for all of the alleged victims' original allegations, even if their case is on direct appeal.  (*Id*. ¶ 9(c).)

- If a sex offender refuses to participate in therapy, including the requirement to admit or accept responsibility for his alleged offenses, that offender is placed on restricted privileges and is required to wear an orange jumpsuit, is not permitted to talk to any family members on the telephone, has limited canteen privileges, and has no access to the gym, television, radio, or any hobby items.  (*Id.*) Inmates on restricted privileges are also have their religious services limited, may only have visitation for two hours a month, and have only one hour per week in the exercise yard.  (*Id.*)

- Probationers and Parolees who are required to live in a Shared Living Arrangement ("SLA") may not have any visitation or telephone contact with family

4

members.  (*Id*. ¶ 9(e).)

Additionally, Defendants have an unwritten practice of applying these policies to anyone they deem a sex offender, even if the inmates' conviction for a sex offense has been vacated by the courts.  (SAC ¶ 9(d).)

Plaintiffs have suffered in various ways under these policies.  For example, Plaintiff Danny Daniels Sr. is imprisoned for an assault and menacing conviction, but is designated a sex offender based on an earlier conviction involving sex with a seventeen year old.  (SAC ¶ 23.)  Mr. Daniels is married and has five children with his wife; he has never been accused of any offense against his children.  (*Id*.)  However, because of the challenged policies, Mr. Daniels has been denied all access to his children since 2007; he is unable to communicate with them in any way, unable to discuss their well-being with his wife, and unable to participate in family decisions.  (*Id*. ¶ 24.)  Mr. Daniels is now on parole but, because of his sex offender classification, is unable to live at home with his family, and has spent months homeless.  (*Id*. ¶ 25.)

Plaintiff Ed Marsh was convicted of sex offenses and is designated a sexually violent predator.  (SAC ¶ 27.)  He is housed at Sterling Correctional Facility, a maximum security prison that does not offer sex offender therapy or treatment.  (*Id*.)  Despite the lack of access to treatment, Mr. Marsh is unable to have visitation with his wife of over 25 years because Defendants assert that such visitation would interfere with his therapy.  (*Id*. ¶ 28.)

Plaintiff Glenn Fisher was charged with sex assault on a child, kidnapping, and indecent exposure, but was acquitted of all charges except misdemeanor indecent

exposure.  (SAC ¶ 44.)  This misdemeanor conviction was later vacated on appeal, and he was acquitted at his retrial.  (*Id*.)  As such, Mr. Fisher has never been convicted of a sex offense.  (*Id*.)  However, Mr. Fisher is on probation on a misdemeanor conviction for harassment, and Defendants have compelled him to participate in sex offender treatment and subjected him to the challenged policies.  (*Id*. ¶ 45.)  In accordance with the policies, Mr. Fisher was forced to move out of his home because there are children under the age of eighteen living there.  (*Id*.)

Plaintiff Brian Baetz is on probation after pleading guilty to attempted sexual assault; this offense did not involve a minor.  (SAC ¶ 68.)  As a condition of his probation, he is not permitted to have contact with anyone under the age of eighteen, including his own children, despite the fact that he has joint custody and joint decision making authority over those children.  (*Id*.)

On these facts and many others, Plaintiffs bring claims for violations of their First, Fourth, Fifth, and Fourteenth Amendment rights, and seek declaratory and injunctive relief.  (SAC ¶¶ 71-84.)  Some Plaintiffs also bring a claim for nominal, compensatory, and punitive damages related to violations of their First, Fourth, and Fourteenth Amendment rights.  (*Id*. ¶¶ 899-98.)

## III.  ANALYSIS

In the Motion, Defendants raise the following arguments: (1) any claim for monetary damages brought against any Defendant in his or her official capacity is barred by the Eleventh Amendment; (2) Plaintiffs have failed to state a claim for a constitutional violation; (3) even if Plaintiffs have stated a claim, Defendants are entitled

to qualified immunity on any claim for monetary damages brought against them in their individual capacities; (4) Plaintiffs' claim for compensatory damages is barred by the Prison Litigation Reform Act ("PLRA"); and (5) Plaintiffs cannot challenge the conditions of their probation or parole because Colorado law permits the imposition of whatever conditions are deemed appropriate for a particular offender.  (ECF No. 118.)  The Court will address these issues in turn below.

A.    **Eleventh Amendment Immunity**

Defendants move to dismiss any claim for retrospective declaratory relief or monetary damages brought against them in their official capacities on the grounds that such claims are barred by the Eleventh Amendment.  (ECF No. 118 at 6.)  In response, Plaintiffs state that "none of the state defendants are sued in their official capacities for retrospective declaratory relief and money damages."  (ECF No. 130 at 6.)  In fact, "[n]o damages are sought against any defendant in his or her official capacity; and the state defendants who are sued in their official capacity only (such as the SOMB Defendants) are sued for prospective injunctive and declaratory relief only."  (*Id.*)

Given these statements, the Court agrees with Plaintiffs that Eleventh Amendment immunity is a "non-issue".  However, the Court also agrees with Defendants that the operative pleading is not entirely clear as to what claims are brought against each Defendant, and in which capacity such claims are brought.  Thus, to the extent Plaintiffs bring any claim against Defendants in their official capacity for monetary damages or retrospective declaratory or injunctive relief, such claims are dismissed without prejudice as barred by Eleventh Amendment immunity.

7

**B.     Whether Plaintiffs Have Stated a Claim for a Constitutional Violation**

In the operative pleading, Plaintiffs allege violations of the following constitutional rights: (1) their Fourteenth Amendment right to Due Process regarding the loss of privilege; (2) their Fifth Amendment right to avoid self-incrimination; (3) their First and Fourteenth Amendment rights to familial association; and (4) their Fourth Amendment right to be free from unreasonable searches.  (SAC ¶¶ 71-84 & 89-97.)  Defendants move to dismiss the first three of these claims on the grounds that Plaintiffs have failed to plead sufficient facts to state a constitutional violation.[1]  (ECF No. 118.)  The Court will address each theory of Plaintiffs' constitutional claims in turn below.

1.     Fourteenth Amendment Claim Regarding Privileges

As part of the sex offender treatment program, inmates are required to admit to, and accept responsibility for, all of the alleged victims' original allegations of harm. (SAC ¶ 9(b).)  If inmates refuse to admit the acts they are accused of committing or violate other conditions of treatment, they are placed on restricted privileges.  (SAC ¶ 9(c).)  While on restricted privileges, inmates are required to wear orange jump suits, have limited canteen privileges, have restrictions on their right to possess books, and were unable to watch television, listen to the radio, play cards with a cellmate, or access the gym.  (*Id*.)  Inmates on restricted privileges are also unable to talk to family members on the phone, and only have two hours of visitation each month.  (*Id*.)

Plaintiffs allege that their Fourteenth Amendment Due Process rights were

---

[1]  No aspect of Defendants' Motion relates to the Fourth Amendment claim brought by Plaintiffs Nikolas and Scott Winder.  (*See* SAC ¶ 94.)  As such, this claim survives and will move forward to discovery.

violated when they were placed on restricted privileges for refusing to participate in therapy while their direct appeals were pending.  (ECF No. 130 at 14.)  To state a claim for a Due Process violation, a prisoner must show: (1) he was deprived of a protected interest in life, liberty, or property; and (2) that he was not afforded the appropriate level of process.  *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012).

A deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Tenth Circuit has held that, where prison policy subjects all inmates who refuse to participate in an assigned treatment program to restricted privileges status, such status can "hardly be said to be 'atypical'."  *Gardy v. Garcia*, 506 F. App'x 812, 814 (10th Cir. 2013); *see also Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999) (when determining whether prison condition imposes "atypical and significant hardship" so as to implicate a liberty interest, the court must consider "the duration and degree of plaintiff's restrictions as compared with other inmates").

In this case, Plaintiffs have not alleged any atypical hardship that arises if they refuse to participate in treatment.  Rather, the restrictions alleged are those that are imposed on any inmate who refuses to participate in an assigned treatment program. As such, Plaintiffs have failed to state a Fourteenth Amendment claim related to placement on restricted privileges and such claim is dismissed.

2.   <u>Fifth Amendment Claim</u>

Plaintiffs also allege that the policy requiring them to admit to prior acts as part of

9

sex offender treatment violates their Fifth Amendment right to avoid self-incrimination. (SAC ¶¶ 9(b) & 72.)  This claim is only brought by those Plaintiffs whose direct appeals are still pending.  (ECF No. 130 at 11.)

The Fifth Amendment Self-Incrimination Clause provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V. To state a claim for a Fifth Amendment violation, a plaintiff must show that he is truly compelled to testify give self-incriminating testimony.  *United States v. Washington*, 431 U.S. 181, 188 (1977).   Under the Fifth Amendment, "[w]hen a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster" which triggers his right against self-incrimination.  *Steiner v. Minn. Life Ins. Co.*, 85 P.3d 135, 142-43 (Colo. 2004) (quoting *In re Folding Carton Antitrust Lit.*, 609 F.2d 867, 871 (7th Cir. 1979)).

Defendants move to dismiss this claim on the grounds that Plaintiffs cannot show that placement on restricted privileges is such a severe penalty that the requirement to admit prior acts constitutes compulsion.  (ECF No. 133 at 5.)  In *McKune v. Lile*, 536 U.S. 24 (2002), the Supreme Court addressed Kansas's policy which required inmates undergoing sex offender treatment to admit to prior acts and, upon refusal to participate, mandated transfer to a maximum security facility with significant privilege restrictions.  The Court held that the penalties imposed on the prisoner were not sufficiently severe so as to constitute compulsion and satisfy the Fifth Amendment standard.  *Id.* at 41-45, 48.  The Tenth Circuit has also held that the loss of good times

credit was not sufficient to constitute compulsion.  *Searcy v. Simmons*, 299 F.3d 1220, 1225 (10th Cir. 2002).  Defendants rely on these cases to argue that Plaintiffs have failed to state a Fifth Amendment claim.  (ECF No. 133 at 5.)

If Plaintiffs were alleging that the only penalties they faced were the possibility of placement on restricted privileges or the loss of good time credits, the Court would undoubtedly agree with Defendants.  However, the only Plaintiffs who are bringing this claim are those whose direct appeals are still pending.  In *McKune*, the fact that an inmate had a "valid conviction" was a significant factor weighing in favor of upholding the requirement that a sex offender admit his misdeeds.  536 U.S. at 36 ("The privilege against self-incrimination does not terminate at the jailhouse door, but the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis.").  For those inmates whose direct appeals are still pending, whether there convictions were "valid" is an open question.  Should an appeals court find an error during a prior trial, any of these Plaintiffs may be given a new trial, at which time he would be able to invoke his Fifth Amendment rights. The possibility of having any prior statements made during sex offender treatment admitted during trial (or used for impeachment), is much more significant than the penalties dealt with in *McKune* or *Searcy*.

In *People v. Guatney*, 183 P.3d 620 (Colo. App. 2007), the Colorado Court of Appeals recognized this distinction and held that the state could not revoke an individual's probation based on the fact that he refused to admit prior sexual acts during therapy so long as that individual's direct appeal was still pending.  The court noted that the consequence of "not asserting the [Fifth Amendment] privilege and making the

admission is the probability that the admission would be allowed into evidence on retrial if the direct appeal is successful.  Such a consequence would be daunting for a guilty person, horrific for an innocent one."  *Id*. at 623.  The Court finds that this same consequence applies here to those Plaintiffs whose direct appeals are pending.  Should they choose to participate in sex offender treatment, they may be compelled to make incriminating statements that could be used against them during a retrial.  The Court finds that this potential penalty is so severe as to constitute compulsion and state a claim for a Fifth Amendment violation.

Accordingly, Defendants' Motion is denied as to Plaintiffs' Fifth Amendment claim for declaratory and injunctive relief.[2]

### 3.  Rights to Familial Association

Plaintiffs contend that Defendants' policies restricting sex offenders—both imprisoned and on probation—from having contact with their family members, particularly their children, violate their First and Fourteenth Amendment rights.

The Supreme Court has held that "parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." *Hodgson v. Minnesota*, 497 U.S. 417, 483 (1990); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (stating that "[a]ccess [to prisons] is essential . . . to families and friends of prisoners who seek to sustain relationships with them"). However, it is also well accepted that "[t]he very object of imprisonment is confinement," and "[m]any of the liberties and privileges enjoyed by other citizens must be

---

[2]  The Court notes that Plaintiffs do not seek monetary damages on their Fifth Amendment claim.  (SAC pp. 62 & 69.)

surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

"Prisoners do not retain rights inconsistent with proper incarceration, and 'freedom of

association is among the rights least compatible with incarceration.'" *Wirsching v.*

*Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004) (quoting *Overton*, 539 U.S. at 131).

A court considering a prison's restrictions on access to family members must

"balance the guarantees of the Constitution with the legitimate concerns of prison

administrators." *Beerheide v. Suthers*, 296 F.3d 1179, 1184 (10th Cir. 2002).  When

considering this issue on a motion for summary judgment, the Court must consider the

four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  *See Al-Owhali v. Holder*,

687 F.3d 1236, 1240 (10th Cir. 2012).  However, on a motion to dismiss, the Court

need only "assess, as a general matter, whether a prison regulation is 'reasonably

related to a legitimate penological interest.'" *Id*.  Thus, to state a cognizable claim

Plaintiffs must plead facts from which a plausible inference can be drawn that the action

was not reasonably related to a legitimate penological interest.  *Gee v. Pacheco*, 627

F.3d 1178, 1188 (10th Cir. 2010).

Plaintiffs allege that Defendants have implemented a "blanket one-sized fits all"

policy that does not permit any inmate, probationer, or parolee classified as a sex

offender to: (1) have visitation or telephone contact with anyone under the age of

eighteen, including their own children; (2) have pictures of any children in their cell,

house, or place of residence; or (3) discuss the welfare of their own children or

grandchildren with their spouses or other family members.  (SAC ¶ 9(a).)  This policy

applies to all sex offenders, regardless of whether their crime had anything to do with

children.  (*Id*.)  Plaintiffs also allege that Defendants have an unwritten practice of applying this policy to inmates who were originally convicted of a sex offense, even after those sex offense convictions have been vacated by the courts.  (SAC ¶ 9(d).)

Defendants contend that their policies are related to a legitimate penological interest, and that Plaintiffs cannot plead sufficient facts to show otherwise.  (ECF No. 118 at 7.)  In support of this argument, Defendants cite *Overton v. Bazzetta*, 539 U.S. 126 (2003), and *Wirsching v. Colorado*, 360 F.3d 1191 (10th Cir. 2004).

In *Overton*, the Supreme Court upheld a policy that restricted inmates' ability to visit with minors who were not their children, stepchildren, or grandchildren.  539 U.S. at 130.  The Court noted that "freedom of association is among the rights least compatible with incarceration", and that "[s]ome curtailment of that freedom must be expected in the prison context."  *Id*. at 131.  However, the Court also stated:

> We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners.  We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests.

*Id*. at 131-32.  Significantly, the Supreme Court noted that the challenged policy in *Overton* allowed visits between an inmate and those children closest to him or her, including children, grandchildren, and siblings.  *Id*. at 133.

In *Wirsching*, the Tenth Circuit considered the State of Colorado's restrictions on minor children visiting an inmate convicted of a sex offense against a child, and held that these restrictions were related to a legitimate penological interest.  360 F.3d at

1201.  The Tenth Circuit noted that Colorado's restrictions were "significantly more severe than the ban on family visits upheld in *Overton*", but held that Colorado had offered evidence of penological interests that were furthered by its policy, and that Plaintiff had failed to rebut that evidence.  *Id*.

Two points are notable about the *Wirsching* decision.  First, Mr. Wirsching was convicted of a sexual offense involving a child.  In contrast, none of the sex offenses committed by the Plaintiffs in this case involved their own children, and most did not involve children at all.  Second, Mr. Wirsching was *pro se* for the entire time his case was pending in the district court.  The Tenth Circuit appointed counsel to pursue to his appeal, but appellate counsel could not change the factual record.  In upholding the regulation, the Tenth Circuit noted that "[h]ad Mr. Wirsching offered evidence as to the feasibility and minimum institutional effect of a less restrictive visitation policy, this would be a closer case."  *Id*. at 1201.  In this case, Plaintiffs are represented by counsel, and the Court finds that they should have the opportunity to develop the record and attempt to make a stronger showing than Mr. Wirsching was able to make on his own.

The Court finds that the factual allegations in Plaintiffs' Second Amended Complaint are sufficient to permit the Court to infer that the challenged policies are not rationally related to a legitimate penological interest.  In *Wirsching*, the Tenth Circuit stated: "Prison officials should be careful to ensure that restrictions upon visitation with a prisoner's children are justified by the circumstances, and they should seriously consider less draconian restrictions—such as closely monitored, noncontact visitation."

*Id*.  As Plaintiffs in this case were not convicted of a sex offense involving children—and some of them have not been convicted of a sex offense at all—the Court finds that they should be permitted to proceed to discovery to attempt to show that the severe restrictions imposed on their contact with their children violate their constitutional rights. The Court finds that Plaintiffs have met their burden to survive a motion to dismiss, and that the scope of the regulations are more appropriately considered on summary judgment.  *See also Brothers v. Lawrence Cty. Prison Bd.*, 2008 WL 146828, at *5 (W.D. Pa. Jan. 14, 2008) (stating that whether a prison regulation is rationally related to a legitimate penological interest is a complex, multi-factor inquiry which does not lend itself to resolution on a motion to dismiss).

Accordingly, the Court finds that Plaintiffs have stated a claim for a First and Fourteenth Amendment violation arising out of the restrictions imposed on their ability to associate with family members.  Defendants' Motion is denied to the extent it seeks dismissal of the declaratory and injunctive relief sought on this claim.  With regard to the claim for monetary damages, the Court must next consider Defendants' assertion of qualified immunity.  (ECF No. 118 at 14.)

## C.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted).  To resolve qualified immunity claims, a court must consider two elements: (1) whether a constitutional violation

16

occurred, and (2) whether the violated right was "clearly established" at the time of the

violation.  *Id.* at 230-31.  The Court may "exercise [its] sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand."  *Id*. at 236. "Qualified

immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry."

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

The Court has already found that Plaintiffs have stated a claim for a

constitutional violation arising out of the restrictions on family visitation.  However, in

order for Plaintiffs to be permitted to recover monetary damages, the alleged

constitutional violation must be clearly established.  *Pearson*, 555 U.S. at 231.  "[T]he

relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful under

the circumstances presented."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir.

2008).  Generally, this requires "a Supreme Court or Tenth Circuit decision on point, or

the clearly established weight of authority from other courts must have found the law to

be as the plaintiff maintains."  *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150,

1155 (10th Cir. 2010) (quotation omitted).

Under Tenth Circuit law, Defendants would not have been on fair notice that their

actions could result in liability.  While the facts of this case are distinguishable from

*Wirsching*, they are similar enough that a reasonable person in Defendants' position

would not have known that their actions violated Plaintiffs' constitutional rights.

Plaintiffs have failed to cite any case in which a court has found restrictions on who can

visit an inmate that has been classified as a sex offender to be unconstitutional, instead relying on general statements regarding the right to family association. (*See* ECF No. 130 at 9-11, 15-16.)  This failure is fatal to Plaintiffs' claim for monetary damages.  *See Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (qualified immunity places the burden on the plaintiff to show that the constitutional right was clearly established at the time of the alleged violation).

Accordingly, the Courts finds that Defendants enjoy qualified immunity from liability for any civil damages, and as a result Defendants' Motion is granted as to Plaintiffs' claim for monetary damages related to the prison visitation policies.

**D.      Prison Litigation Reform Act**

Defendants move to dismiss any claim for monetary damages sought by Plaintiffs who are currently incarcerated pursuant to the PLRA.  (ECF No. 118 at 14.) The PLRA states, in pertinent part, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Defendants contend that no Plaintiff suffered a physical injury as a result of their policies and, therefore, cannot recover any damages for a mental or emotional injury.  (ECF No. 118 at 14.)  In response, Plaintiffs admit that they cannot seek compensatory damages, but contend that their claims for nominal and punitive damages are not affected by the PLRA.  (ECF No. 130 at 15.)

The Court finds that this issue is moot given the Court's ruling that Defendants are entitled to qualified immunity from Plaintiffs' claims for monetary damages.  Punitive

damages and nominal damages are monetary damages to which qualified immunity

applies.  *See Sandlin v. Garcia*, 2011 WL 1336286, *7 (D. Colo. March 10, 2011)

("Having found that Defendants are entitled to qualified immunity from liability, the Court

need not address whether Plaintiff has failed to state a claim for punitive damages.").

**E.      Rights of Parolees and Probationers**

Though not directed towards a particular claim or constitutional violation,

Defendants generally move to dismiss all claims brought by parolees and probationers

on the grounds that Colorado law permits Defendants to impose any condition that they

deem appropriate.  (ECF No. 118 at 11-12.)  While the Court takes no issue with

Defendants' recitation of the statutes, the Court does not agree that the ability to

impose any restriction deemed necessary on a parolee or probationer means that these

claims must be dismissed.  All of the restrictions placed on a parolee or probationer are

still subject to review to ensure that they fall within the bounds of the Constitution.  The

Colorado legislature cannot by statute bestow on Defendants the right to impose

restrictive policies or restraints which this Court finds to be in violation of the U.S.

Constitution.  Indeed, there are many cases in which courts have considered the

constitutionality of various restrictions placed on parolees and probationers.  *See, e.g.,*

*Guatney*, 183 P.3d at 625 (considering whether state could impose a probation

condition that required the offender to participate in sex offender treatment while his

direct appeal was pending); *Schwartz v. N.M. Corrs. Dep't*, 384 F. App'x 726, 732 (10th

Cir. 2010) (reviewing the constitutionality of various conditions imposed on a

probationer).  Thus, the Court finds that Defendants have failed to show that Plaintiffs

are unable to bring their claims related to conditions of parol or probation.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Defendants' Motion to Dismiss (ECF No. 118) is GRANTED IN PART and

DENIED IN PART;

2.   Plaintiffs' claim for monetary damages against any Defendant in his or her official

capacity is DISMISSED WITHOUT PREJUDICE;

3.   Plaintiffs' Fourteenth Amendment claim related to placement on restricted

privileges is DISMISSED WITH PREJUDICE;

4.   Plaintiffs' claim for monetary damages arising out of Defendants' policies

restricting visitation with family members is DISMISSED WITH PREJUDICE; and

5.   This action remains pending as to the following claims:

a.   Plaintiffs' Fourth Amendment claims, including the Winders' claim for

monetary damages;

b.   The Fifth Amendment claims seeking declaratory and injunctive relief and

which are brought by those inmates whose direct appeals are pending;

c.   The First and Fourteenth Amendment claims alleging violation of Plaintiffs'

right to familial association to the extent to such claims seek declaratory

relief.

Dated this 4th day of September, 2014.

BY THE COURT:

William J. Martinez
United States District Judge